[Cite as *State v. Beck*, 2025-Ohio-2152.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,            :

                      No. 114522

    v.                             :

ANTHONY BECK,                           :

    Defendant-Appellant.           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 18, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-681014-D

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and James D. May, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Michael V. Wilhelm, Assistant Public Defender, *for appellant.*

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant Anthony Beck appeals from his judgment of conviction, which was rendered after his guilty plea to eight crimes. After a thorough review of the facts and pertinent law, we affirm.

{¶ 2} Beck was indicted, along with ten codefendants, in a 56-count indictment, 20 of which were relative to Beck. The charges related to financial crimes. Beck and the State negotiated a plea agreement, under which Beck pleaded guilty to eight counts (some of which were amended) consisting of one count of telecommunications fraud, one count of grand theft, four counts of tampering with records, and two counts of forgery. In addition to the dismissal of the remaining counts in exchange, Beck agreed to assist the State, if needed, in prosecuting the other defendants.

{¶ 3} The matter first came on for a change-of-plea hearing on September 30, 2024. At the hearing, the court noted that there had been "many[,] many pretrials on this case" and counsel had worked diligently to arrive at a plea agreement. Tr. 3. Defense counsel acknowledged that an agreement had been worked out but asked the court for indulgence if Beck had questions because the case was complex and there had been "some confusion." *Id.* at 4. The trial court told Beck to "just speak up" if he had a question — he could ask the court a question or speak privately with his attorney. *Id.* at 4-5. The court elaborated as follows:

> We want to make sure you understand and the parties understand exactly what the plea will be, what the possible consequences will be, and all the rights you'd be waiving in order to plea to this sort of crime, so you can see the benefits. . . .

*Id.* at 5.

{¶ 4} The assistant prosecuting attorney noted that "[t]here are many changes here that are beneficial to Mr. Beck considering his position." *Id.*

The assistant prosecuting attorney and defense counsel put the plea agreement on the record. Regarding sentencing, counsel explained that Beck was, at the time of the hearing, serving sentences on two other cases and he had four and a half years left on those sentences. The assistant prosecuting attorney informed the court that the State would not be seeking any additional time; that is, it would seek a four-and-a-half-year sentence on this case to be served concurrently with Beck's other sentences.

{¶ 5} In discussing postrelease control, defense counsel informed the trial court that "this is where the confusion is with my client, and I want to make sure it's on the record." *Id.* at 16. Counsel explained that Beck had the possibility for judicial release under the sentences he was then serving on the other cases; it was Beck's hope that he would be "shocked out." *Id.* The trial court questioned the likelihood of Beck being granted shock probation: "I didn't know it was possible for somebody with his record to get shock probation." *Id.* at 17. Defense counsel agreed that, in his 40 years of practicing, he had never seen that happen, but wanted to get the issue on the record because it was the "last hurdle" for Beck to understand the plea agreement. *Id.*

{¶ 6} According to defense counsel, shock probation was not an impossibility for Beck. The trial court stated that even if it were a possibility, the likelihood of it occurring would be similar to the likelihood of "getting hit by a meteorite." The court asked, "So how far do you want to go in this discussion?" *Id.* at 19. An off-the-record sidebar was held, and when the parties came back on the record, the trial court

reiterated that Beck would not be subject to any additional time. The trial court stated, "Now, I've been around here a long time, and I haven't seen a plea bargain like that before. Certainly not any better than that one." The court then explained to Beck that "you can't negotiate out parole," explaining that parole was up to the Department of Rehabilitation and Correction. *Id.* at 21. The court advised Beck, "So are you going to plea or we're not going to plea?" *Id.*

{¶ 7} Beck responded that "they just brought me in" and he "didn't even have a second to talk" to his attorney. *Id.* at 22. The trial court vehemently disagreed with Beck, noting that Beck had been "ordered up" numerous times to meet with his attorney. *Id.* at 23. Beck responded, "I don't have [a] problem with the plea. But what I was saying was, on my paper that I got from my counsel, I wanted to plead no contest." *Id.* at 25. The court stated, "I don't accept no contest, so that's over. You're either guilty or not guilty, period." *Id.*

{¶ 8} Beck then referred to a motion to dismiss on speedy-trial grounds that counsel had filed on his behalf; the motion was denied. Beck explained that he wanted to preserve his appellate right to challenge the denial of his motion to dismiss and that is why he wanted to enter a no-contest plea. The trial court adjourned the hearing.

{¶ 9} The hearing resumed on October 2, 2024, at which time defense counsel informed the trial court that Beck understood the plea agreement and wished to plead guilty under the agreement. Beck agreed and pleaded guilty as set forth under the parties' agreement. The trial court accepted the plea as being

knowingly, voluntarily, and intelligently made. The trial court sentenced Beck to four and a half years, to be served concurrently with his other cases. Beck now appeals, raising the sole assignment of error for our review: "The trial court abused its discretion in preventing the Appellant from pleading no contest." Beck contends that the trial court abused its discretion by stating a "blanket no-contest plea policy." We disagree.

{¶ 10} Crim.R. 11(A) allows a defendant to plead no contest "with the consent of the court. . . ." The Ohio Supreme Court has held that a trial court may not adopt a blanket policy of rejecting no-contest pleas, however. *State v. Beasley*, 2018-Ohio-16, ¶ 13. Our review of the matter is under the abuse-of-discretion standard. *Id.* at ¶ 10. A court abuses its discretion when it exercises its judgment in an unwarranted way with respect to a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. Crim.R. 11 "does not require a trial court to list its reasons for rejecting a no-contest plea." *Akron v. Hendon*, 2006-Ohio-1038, ¶ 9 (9th Dist.).

{¶ 11} In *Beasley*, the defendant wished to enter a no-contest plea so that she could appeal the trial court's denial of her motion to suppress. The trial court stated, "I see what you're saying," but informed the defendant that it had a "blanket policy" of not accepting no contest pleas "under any circumstances." *Id.* at ¶ 3-4.

{¶ 12} The *Beasley* Court held that "a trial court abuses its discretion when it rejects a no-contest plea as a matter of course without considering the facts and circumstances of the case." *Id.* at ¶ 10. The court elaborated that

> [t]he record here establishes that the trial court had a blanket policy of not accepting no-contest pleas. In other words, the court rejected any and all no-contest pleas as a matter of course without any consideration of the facts or circumstances of each case. We conclude that the court's adherence to such an arbitrary policy constitutes an abuse of discretion.

*Id.* at ¶ 13.

{¶ 13} The record here does not demonstrate that the trial court had a blanket policy — regardless of the facts and circumstances of a case — of not accepting no-contest pleas. Further, the record here demonstrates that the trial court gave due consideration to the facts and circumstances of this case. There was extensive discussion among the parties and the court about the charges Beck pleaded guilty to and the exposure he faced if he did not plead and was found guilty as indicted. Beck did not state that he wished to forgo the plea agreement and plead no contest to the 20 counts he faced. The trial court afforded Beck ample time to consult with counsel and consider his options. When the hearing resumed, Beck indicated that he understood the plea agreement and wanted to abide by it.

{¶ 14} In a case similar to the within case, *State v. Tittle*, 2025-Ohio-596 (9th Dist.), the appellate court found no abuse of discretion in the trial court's decision to not accept a no-contest plea. In *Tittle*, the defendant and the State negotiated a plea agreement with a recommended sentence. At the plea hearing, the trial court engaged in a detailed colloquy wherein it advised the defendant of his rights and the possible sanctions associated with pleading guilty. The trial court also discussed the terms of the plea agreement and confirmed that the defendant understood those terms. The defendant pleaded guilty. After the trial court

accepted his plea, the defendant asked the court if it would accept a no-contest plea. The court responded, "No, it's either guilty or nothing." *Id.* at ¶ 5. The court then asked the defendant if that changed what he wanted to do, and the defendant responded, "No." *Id.*

{¶ 15} The Ninth District found no abuse of discretion. The court noted that the defendant and the State had entered into a plea agreement that included an agreed sentencing recommendation, the defendant had an extensive criminal history, and he received a benefit by pleading guilty. Further, the court noted that the trial court complied with the Crim.R. 11 requirements during the plea hearing and gave the defendant an opportunity to change his mind.

{¶ 16} Likewise, here, the record demonstrates that Beck and the State had an agreement, one which was favorable to Beck, who also had an extensive criminal record. The trial court had an in-depth discussion about the charges Beck pleaded guilty to, as well as what he would be facing if he proceeded on the indictment as charged. The court also gave Beck time to consult with his attorney and change his mind if he wished. Moreover, just as in *Tittle*, the trial court here did not state that it was its blanket policy to not accept no-contest pleas.

{¶ 17} Because the trial court did not indicate that it had a blanket policy of not accepting no-contest pleas in all cases, and because the trial court gave due consideration to the facts and circumstances presented in this case, it did not abuse its discretion in denying Beck's request to plead no contest. Further, after

consultation with counsel, Beck stated that he understood the plea agreement and wished to abide by it. The sole assignment of error is therefore overruled.

{¶ 18} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

MICHELLE J. SHEEHAN, P.J., and
LISA B. FORBES, J., CONCUR